UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| QUENTIN BORGES-SILVA,<br><br>Appellant,<br><br>v.<br><br>MICHAEL S. REGAN, Administrator,<br>U.S. Environmental Protection Agency,<br><br>Appellee, | No. 23-5030 |

**PETITION FOR REHEARNG EN BENC**

**Introduction**

There are questions of exceptional importance in this case. The Circuit Court's Appeal decision on Summary Affirmance is in conflict with a number of the precedents cited in its decision. Fundamentally, the decision conflicts with *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). The D.C. Circuit Court has held that by the time a "district court considers an employer's motion for summary judgment . . . the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision." *Id.* at 493. Once that has happened, the existence of a *prima facie* case is irrelevant and "the district court need not—*and should not*—decide whether the plaintiff actually

made out a prima facie case under *McDonnell Douglas*." *Id.* at 494 (emphasis in original). Instead, the Court "must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee . . . ?" *Id.* This summary affirmance basically abandons *Brady*.

It also abandons *Mitchell v. Baldrige*, 759 F.2d 80, 86, 245 U.S. App. D.C. 60 (D.C. Cir. 1985) which hold that with respect to causation, the initial burden is not great as the Plaintiff merely needs to establish facts adequate to permit an inference of retaliatory motive." It also breaks new ground on the issue of temporal proximity in that the Court's should apply this very narrow definition of that concept. Namely, prior discrimination triggering an adverse action like a PIP has no relevance to a temporal proximity analysis. the intervening discrimination present already in a case which in this case caused the PIP situation in the first place, should not be looked at as a discriminatory. This is just not the law.

1. **The Court's Reliance on In re Subpoena Duces Tecum, 439 F.3d 740, 743 (D.C. Cir. 2006) is Faulty**

The aforementioned case is loosely cited by the Court and the page cited, 743, has the basic three elements for Collateral Estoppel. The issue here is the Court didn't analyze the manner in which those elements are applied here.

2

The fundamental error in the lower Court's opinion is completely separating the PIP itself, including the factors leading up to the PIP and the Appellant's performance during the PIP. However, this a case where the Appellee has already admitted that termination depends on the PIP. Without the PIP, there is no termination per to Title 5, United States Code, Chapter 43, and the implementing regulations at Part 432 of Title 5, Code of Federal Regulations (CFR). R. 14-13, page 2 of 5. When a Court or a jury finds that a termination was the product of Title VII retaliation that termination is reversed. It's undisputed that the affected employee has reinstatement as a remedy and receives backpay. As such, it is as though that termination document no longer exists. Here, the lower court is relying on a key piece evidence that no longer exists. There is no PIP. It has the legal effect of never happening.

At minimum, the District Court should have acknowledged that whether the Appellant proved discrimination or once on the PIP, the EEOC Court's decision that the PIP was discriminatory and that Mr. Borges-Silva was suffering through a hostile work environment is not as issue. Then the lower court could have begun its analysis of discrimination from that point.

    2. The Court's Reliance on Brady v. Off. Of Sergeant at Arms, 520 F.3d 490, 494, Allen v. Johnson, 795 F.3d 34, 39 (D.C. Cir. 2015) and Gilbert v. Napolitano, 670 F.3d 258, 261-262 (D.C. Cir. 2012) as precedents standing for an Precedent of Poor Performance is Faulty.

The first problem here with reliance on these cases is none of them dealt with employees who at the time of the poor performance were subject to a hostile work environment. Even if the Court didn't recognize the hostile work environment claim as relevant to issue preclusion, there had to have been some analysis as to the reasons it wouldn't or didn't matter.

The problem there is Title VII protects employees against hostile and abusive working environments. "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)* (quoting *Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986))*.

Hence, by definition, the Appellant was working in a situation that altered the conditions of his employment. None of the precedent cited by the Summary Affirmance decision involve an employee who had his employment conditions altered per *Harris*. Also, the hostile work environment was based on the Appellant's gender, as determined by the EEOC Administrative Judge.

The second problem with this portion of the Summary Affirmance opinion is the Court doesn't, as stated above, doesn't deal with the issue that the Appellant

4

should never have been on a PIP. None of those precedents deal with this key factor.

Third, the Appellant presented a plethora of evidence to rebut the Appellee's alleged legitimate justification for his termination. A number of witnesses

testified to the Appellant's proficiency. Key portions of co-worker Enid Chiu's testimony was presented. R22-2, pages 15-18, 52,. Dian Overbey, another co-worker's testimony is in the record. R. 22-2, at 83-84, 86, 105-108. Dian Overbey testified that she had more experience in the branch and she knew the subject matter better than anyone in the branch, except the Appellant. R.22-4 at 189.

Anne Overstreet, a highly credentialed manager, was the Appellant's previous first line supervisor in the same job for roughly six years R. 22-2,. at 175-178. Anne Overstreet worked with Appellant in centralizing responses. R. 22-2,. at 187-188. She had very high quality things to say about the Appellant. R. 22-2, at 190-195, 198, 202. R.22-4 at 150-151, 158, 160.

There was also significant testimony on the disparate treatment of the Appellant. Ms. Chiu's testimony was recounted at R. 22-2 at 40, 42, 48. R22-4 at 106-107, 128. Ms. Overbey's testimony on this point is also in the record. R.22-2 at 129-131. R.22-4 at 200-203. More specifically, she testified to the disparate treatment the Appellant received pertaining to the supervisor's corrections. R. 22-3 at 1208. R22-2 at 101, 103, 113-115.

5

She also testified that the subject supervisor, Siedschlag, took away one of her duties and transferred it to the Appellant. R.22-4 at 197-199. "I told the Appellant that I did not know why these duties were being moved and Borges-Silva's workload was not like I did not have time to do it." R. 22-2 at 1209. Overbey testified there were people with a lot on their plates and she doesn't feel like she was "one of them" even though her work was given to the Appellant. R. 22-2 at 98.

The Appellant provided examples of disparate treatment at his EEO hearing. R22-3 at 354-358. R22-4 at 283-288, 291-292 and R.22-3 at pages 349-353. 22-3 pages 364-365. R22-4 at 293-295.

Yvette Hopkins, another co-worker, testified to the disparate treatment she witnessed. R. 22-4 at 17. R. 22-3 at 1203. She's seen the Appellant's answers to inquiries overwritten to a degree greater than everyone else; she's seen email where Siedschlag changed the Appellant answers to inaccurate ones. Id. She also attested that there was an unusual incident in which Siedschlag was in a rage against the Appellant asserting that he couldn't find him, but given the office culture, this was basically just harassment. Id.

There were also various credibility issues involving the Siedschlag. One issue pertained to his denial that the Appellant discussed the backlog with his team leader. R.22-4 at 247, 398. told him he had discussed it with Kaythi Han, the team lead, but Siedschlag denied same. Id. Siedschlag admitted that in April, 2019, he

6

sent a letter to the Appellant apologizing to the Appellant for accusing him of lying – that he didn't tell his team leader Kaythi Hahn, about the backlog. R. 22-5 at 400. However, Siedschlag gave an EEO affidavit in October, 2019, contending the same allegation against the Appellant that he, Siedschlag, apologized for six months earlier. Exhibit R. 22-3 at 1094.

With respect to the 25 webmail responses per day requirement, Siedschlag contended that the Appellant could respond to 25 easy, simple or less complex webmails which involved copying and pasting boilerplate responses. The Appellant and other witnesses testified that this was not feasible. R.22-4 at 257-258, 340-341. Furthermore, the act of finding the simple ones was time-consuming. Id. The Appellant had other duties such being the lead on neonicotinoid pesticides and there are global issues with them. R.22-4 at 233. He was also the branch expert on neonicotinoid pesticides and pollinator issues. Id. He also had to deal with some very complex webmail inquiries that took weeks and had far reaching implications such as one affecting the Oklahoma water supply. R.22-4 at 278, 281-282.

Enid Chiu explained the reasons 25 per day was not realistic. R. 22-2, at 32. So did Dian Overbey. R22-2,. at page 110- 111. So did Anne Overstreet. R. 22-3 at 1208 and R22-2 at 131, 206-209, 212. Finally, although Siedschlag claimed he could easily respond to 25 webmail inquiries per day, he testified that per his declaration, he couldn't provide any details on the citizens writing back to him, etc.

7

R22-6 at 94-97. Nobody reviewed his responses. Id. at 95. He also admitted that the Appellant's alleged "quality issues" impeded his progress on the quantity of webmail responses. R.22-6 at 92-93.

The Appellant also disproved each and every one of the individual quality issues on this PIP and on the termination notice. R22, page 15-21 and 26-28. There was no response by the Appellee as to the Appellant's rebuttal of those quality issues.

The Appellant should have been moved after he complained about a hostile work environment. The EPA had Classification No. 4711 Order that provided the procedure for addressing allegations of workplace harassment. R.22-3, at 1046-1062. Tessa Burmania, an agency labor and employment specialist, testified that the items on the 4711 process should be followed as Agency policy. R.22-4 at 248, R. 22-5 at 199-200. R. 22-5 at 177.

the Appellant filed a 4711 complaint and Burmania testified that there was a 4711 investigation done and she worked with management to select the appropriate decision maker. R.22-5 at 200-201. A copy of the Appellant's 4711 complaint which included allegations of discrimination was forwarded to Burmania on April 15, 2019. R. 22-5 at 194-195, R22-3 at page 1462, 1467-1468. Burmania admitted that the Appellant brought up gender discrimination in his 4711 complaint. R.22-5 at 197. Jackie Mosby, the Division Director, admitted that one of the Appellant's

8

4711 complaints included that his work was overly scrutinized compared to his female co-workers' work. R.22-5 at 240. She read or expected an investigation on that issue. Id.

The Appellant's 4711 complaint also included an allegation that when he attempted to follow up with Jackie Mosby, the Division Director, about his 4711 complaints, she refused a meeting with him. R22-5 at 197-198, R.22-3 at 1462-1468. According to Section J of the 4711, the decision maker should not have been named in the allegations of harassment or witnessed the alleged incident of harassment and may not be an advocate on behalf of either party. R.22-3 at 1050. 1052.

Mosby admitted that after the Appellant filed his 4711, he asked Mosby for a transfer to a different position. R.22-5 at 258. She did not honor that request. Id. She admitted she had knowledge of the 11 page 4711 process. Id. at 259-260. Mosby admitted that she was a person included in the aforementioned 4711 directive under the heading of "Immediate Response." R.22-5 at 260. She had knowledge of that directive. Id. at 261. She also admitted that the situation involving the Appellant was not one in which he would have been moved involuntarily. Id. at 262. He asked to be moved. Id.

Mosby admitted she was the decision maker on the 4711. R.22-5 at 240-241. Mosby made her decision on the findings in a memorandum dated August 13, 2019. R.22-3 at 1489.

Mosby admitted that Siedschlag used his judgment to determine which of his direct reports needed their webmails reviewed and which did not. R.22-5 at 239-240. Mosby listed 15 documents she reviewed in her decision making process. R. 22-3 at 1483. She did not actually review the actual responses of the Appellant or anyone else's. R. 22-5 at 253-256. Mosby also had no role in the Appellant's performance evaluations. R.22-5 at 256-257.

In short, none of these factors were present in any of the precedents cited by the Appeals Court in its Summary Affirmance opinion. As such, there should be a rehearing on these issues.

   3. The Appeals Court Reliance on Burley v. Nat'l Passenger Rail Corp., 801 F.3d 290, 301 (D.C. Cir. 2015).

The Appeals Court stated that the Appellant has not introduced evidence demonstrating "that all of the relevant aspects of his employment situation were nearly identical to those" of the comparators he proffered in the district court. But once an employer sets forth a legitimate, non-discriminatory reason for the employment action, "the question whether the employee actually made out a *prima facie* case is no longer relevant, and thus disappears and drops out of the

10

picture." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493-94, 380 U.S. App. D.C. 283 (D.C. Cir. 2008). At that point, the court must determine whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race" or some other prohibited ground. Id. at 494. Consequently, the Court applied the wrong standard of law.

Also, the entire point of *Brady* and the more inclusive view of Title VII Summary Judgment is that many cases have no complete comparator. Job titles may be different. Job titles may be identical, but primary job duties might be different. One employee may be terminated for 5 violations of a policy and another 3 times. One employee could have broken a law by driving 97 miles per hour versus another one at 84 miles per hour.

There is a line that can be drawn. Burley is an example of this line where it's a single event necessitating termination when an employee basically caused a train to derail and that employee was the only person responsible. Id. at 293-296. Burley had none of these other factors that are in the case at bar. Burley was simply a case of pure speculation of discrimination with no evidence of discrimination.

Here, there wouldn't be a similarly situated female employee because the Appellant was the only employee who was placed on a PIP that was the result of

11

discrimination. Hence, the lower Court penalized the Appellant because of the very same disparate treatment from which he was a victim. Really, the question before the Court would be whether Summary Judgment is appropriate where there is no comparator and the reason there's no comparator is because of prior discrimination against the same employee. The answer per *Brady* has to be "no".

> 4. The Appeals Court Decision Had no Citation to the Temporal Proximity Issue.

The Appeals court stated "Finally, appellant has not shown that the ***temporal proximity*** between his ***protected activity*** and ***his<u> termination</u>*** from the EPA supports a reasonable inference in this case that the agency's stated reasons for his termination were pretext for retaliation". First, this case is far from one simply relying on temporal proximity, and the Appellant effectively disproved the Defendant's contentions justifying the PIP, and the examples cited during the PIP. The Agency also failed to follow its own 4711 policy requirements, as mentioned before. Secondly, the Appeals Court here is erroneously treating the initial complaint date and the ***termination date*** as the two endpoints for temporal proximity. The Appeals court missed the fact that many of the alleged quality errors mentioned in the PIP took place in June, July, August, and September, along with the alleged counseling dates. R.14-10, pages 2-6. Those errors were then shown to be completely untrue. Therefore, the PIP itself was shown by the Appellant to be retaliatory. Hence, there

12

was a bridge of retaliatory activity between those first two named endpoints that the Appeals Court erroneously didn't consider. If it had considered that said bridge of retaliatory activity, you would then have the temporal proximity between the Appellant's protected activity and the facts included in that bridge of retaliatory activity, and this would then support a reasonable inference in this case that the agency's stated reasons for his eventual termination were indeed pretext for retaliation.

The Appeals Court also stated that the Appellant had not provided sufficient evidence that the EPA's stated reasons for his termination were pretext for discrimination or retaliation. But with respect to causation, the initial burden is not great, as the Appellant merely needs to establish facts adequate to permit an "inference of retaliatory motive." *Mitchell v. Baldrige*, 759 F.2d 80, 86, 245 U.S. App. D.C. 60 (D.C. Cir. 1985) (internal quotation marks and citation omitted). The causal connection component of the prima facie case may be established simply by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action [**12] took place shortly after that activity." Id. The contours of that time limit test, however, are not entirely clear. *Compare Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273—74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (citing cases holding three- and four-month periods "between an employer's knowledge of protected activity and an adverse employment action"

13

insufficient "evidence of causality"), *and McIntyre v. Peters*, 460 F. Supp. 2d 125, 133 (D.D.C. 2006) ("This Court has often followed a three-month rule to establish causation on the basis of temporal **proximity** alone."), *with Brodetski v. Duffey*, 199 F.R.D. 14, 20 (D.D.C. 2001) ("Although courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for establishing a causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length."), *and Castle v. Bentsen*, 867 F. Supp. 1, 3 (D.D.C. 1994) (holding that a gap of three to five months "establishes a causal connection and prima facie case sufficient to go to [a] jury").

    The bottom line is that the termination *process* began with the PIP. As stated above the Appellant complained about discrimination of which the Agency was aware in April 2019. Mosby actually attested she learned of the 4711 complaints in August 2019. Exhibit 5 at page 1181. The Appellant amended his EEO Complaint in August 2019. Exhibit 5 at page 69. On August 26, 2019, Siedschlag told the Appellant that if he felt harassed, he could file a 4711. Id. at 1272, 1277. Then there was retaliatory activity per webmail response criticisms totally unjustified in late August 2019. The Appellant amended his EEO complaint, October 3, 2019. Exhibit 5 at 59. The PIP was issued October 23, 2019, and the Proposal to Remove was dated in January 2020.

But this case is far from one simply relying on temporal proximity. The Plaintiff effectively disproved the Defendant's contentions justifying the PIP and the examples cited during the PIP. The Agency failed to follow its own 4711 policy requirements.

_____/s/_____
Morris E. Fischer, Esq.
DC Bar No: 490369
Morris E. Fischer, LLC
11510 Georgia Avenue
Suite 235
Silver Spring, MD 20902
301-328-7631 Office
301-328-7638 Fax
morris@morrisfischerlaw.com
Counsel for Appellant

**CERTIFICATE OF COMPLIANCE**

1.     This opposition complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   [ X ] this opposition contains [3440] words.

   [ ] this opposition uses a monospaced type and contains [*state the number of*] lines of text.

2.     This opposition complies with the typeface and type style requirements because:

   [ X ] this opposition has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

   [ ] this opposition has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: September 24, 2023                            /s/ Morris E. Fischer
                                                                              *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 24th day of September, 2023, I caused this Petition for Rehearing En Benc to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel of record as registered CM/ECF users.

/s/ Morris E. Fischer
*Counsel for Appellant*